IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DOUGLAS LINCOLN, JR.,           §
TDCJ No. 02444267,              §
                               §
            Plaintiff,          §
                               §
V.                             §           No. 3:22-cv-1955-L-BN
                               §
ELLIS COUNTY, TEXAS, ET AL.,    §
                               §
            Defendants.         §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Douglas Lincoln, Jr., a former Texas prisoner, filed claims alleging constitutional violations in a pending case brought under 28 U.S.C. § 2241. *See* Dkt. No. 3. The constitutional claims were severed, and this case was opened. *See* Dkt. No. 4. Lincoln then amended his complaint to allege claims under the Eighth Amendment and other claims relating to the conditions of transport during his extradition from Chicago, Illinois to Waxahachie, Texas against Ellis County and United States Homeland Prisoner Transport, LLC ("USHPT"). *See* Dkt. No. 18.

United States District Judge Sam A. Lindsay referred Lincoln's lawsuit to the undersigned United States magistrate judge for screening under 28 U.S.C. § 636(b) and a standing order of reference.

The Court granted Lincoln leave to proceed *in forma pauperis* under the Prison Litigation Reform Act ("PLRA"). *See* Dkt. No. 8.

And, after screening his claims, as detailed below, the undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should

dismiss all claims against Ellis County with prejudice under 28 U.S.C. § 1915A and sever the claims against USHPT and transfer them to the Middle District of Florida.

## Applicable Background

Under the PLRA, where prisoners (whether incarcerated or detained pending trial) seek relief from a governmental entity or employee, a district court must, on initial screening, identify cognizable claims or dismiss the complaint, or any portion of the complaint, that "is frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

Although the original claims filed in this lawsuit potentially implicated the rule in *Heck v. Humphrey*, 512 U.S. 477 (1994), under which "a civil rights lawsuit" is not allowed "to be an alternative vehicle [ ] to a criminal case for challenging law enforcement decisions that resulted in arrest or prosecution unless the criminal case was resolved 'in favor of the accused,'" *Morris v. Mekdessie*, 768 F. App'x 299, 301 (5th Cir. 2019) (quoting *Heck*, 512 U.S. at 484), Lincoln has dropped those claims from his amended complaint. *Compare* Dkt. No. 3, *with* Dkt. No. 18. The amended claims instead assert that USHPT subjected him to cruel and inhuman treatment when it was contracted by Ellis County to transport him from Chicago to Waxahachie around May or June 2022. *See* Dkt. No. 18.

## Legal Standards

As set out above, the PLRA authorizes the Court to dismiss a complaint where it "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).

Because this language tracks the language of Federal Rule of Civil Procedure 12(b)(6), the Court should apply the pleading standards as set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Under these standards, Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, but it does require "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557).

On the other hand, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *cf. Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

"The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

And, while a court must accept a plaintiff's allegations as true, it is "not bound

to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In fact, "the court does not 'presume true a number of categories of statements, including,'" in addition to legal conclusions, "'mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021)).

So, to avoid dismissal for failing to state a claim upon which relief may be granted under Section 1915A(b)(1), plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679)).

## Analysis

### I.    Claims against Ellis County should be dismissed.

A county "cannot be held liable under § 1983 unless 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Martinez v. Nueces Cnty.*, 71 F.4th 385, 389 (5th Cir. 2023) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)). A plaintiff may proceed on a

*Monell* claim only by

> identify[ing] "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up). Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable for an isolated unconstitutional act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

*Hutcheson v. Dall. Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021); *see also Brown v. Tarrant Cnty.*, 985 F.3d 489, 497 & n.11 (5th Cir. 2021) (noting that where a plaintiff's claim fails as to one prong, a court "need not consider whether [his] claim also fails the other two *Monell* prongs" (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010))).

As to Ellis County, Lincoln alleges that "in or about the month of May or June, 2022," it "executed a policy of Prisoner Extradition, a policy created by the county upon the Plaintiff." Dkt. No. 18 at 6. And Lincoln alleges that the "policy" was to hire a private transport company rather than having their own employees transport Lincoln from Chicago. *Id.*

"To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); footnote omitted). And, "'[t]o establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" *Pinedo v. City of Dallas,*

*Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 582 (5th Cir. 2001)); *see also James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) ("Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" (quoting *Piotrowski*, 237 F.3d at 579 (quoting, in turn, *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc))).

Lincoln's allegations appear to conflate an extradition order specific to him with a policy of Ellis County. And there are no allegations of widespread practices to establish a custom.

Lincoln has alleged only that the purported policy was a policy of Ellis County but has not included any facts to "establish that the challenged policy was promulgated or ratified by the city's policymaker." *Groden v. City of Dallas*, 826 F.3d 280, 285 (5th Cir. 2016); *see also Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) ("Because the 'specific identity of the policymaker is a legal question that need not be pled,' plaintiffs can state a claim for municipal liability as long as they plead sufficient facts to allow the court to reasonably infer that the [policymaker] either adopted a policy that caused [their] injury or delegated to a subordinate officer the authority to adopt such a policy." (citing *Groden*, 826 F.3d at 284, 286)).

But even if Lincoln has sufficiently alleged a policy attributable to a

policymaker for Ellis County to hire an outside transport company for extraditions, he has not "plead facts that sufficiently connect the policymaker to the allegedly unconstitutional policy," *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) (cleaned up). Specifically, he has not shown how an alleged policy to use an outside transport company rather than Ellis County employees to extradite prisoners is the moving force behind allegations that the conditions of transport violated the Eighth Amendment.

In sum, Lincoln has not alleged sufficient facts to plausibly allege – or from which the Court may reasonable infer – that a final policymaker for Ellis County approved a policy that is the moving force behind the constitutional violations Lincoln has alleged.

Lincoln also alleges claims for assault, torture, and life endangerment. *See* Dkt. No. 18 at 8. As to the assault claim, he specifically cites section 22.02(a) of the Texas Penal Code. *Id.* Under Texas law, "the Penal Code does not create private causes of action, and a victim 'does not have standing to participate as a party in a criminal proceeding.'" *A.H. Belo Corp. v. Corcoran*, 52 S.W.3d 375, 379 (Tex. App—Houston [1st Dist.] 2001, pet. denied) (citation omitted); *see also Reeder v. Daniel*, 61 S.W.3d 359, 362 (Tex. 2001) ("[T]he fact that the Legislature enacts a criminal statute does not necessarily mean that this Court may recognize a civil cause of action predicated upon that statute."); *Joyner v. DeFriend*, 255 S.W.3d 281, 283 (Tex. App—Waco 2008, no pet.) ("However, Texas does not recognize private causes of action for penal code violations"); *Spurlock v. Johnson*, 94 S.W.3d 655, 658 (Tex. App.— San

Antonio 2002, no pet.) ("Texas Penal Code does not create private causes of action").

Similarly, to the extent, Lincoln is seeking to bring a private action under a federal criminal statute, there must be "a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." *Cort v. Ash*, 422 U.S. 66, 79 (1975), *overruled in part by Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979); *see also Suter v. Artist M.*, 503 U.S. 347, 363 (1992) (the party seeking to imply a private right of action bears the burden to show that Congress intended to create one); *Pierre v. Guidry*, 75 F. App'x. 300, 301 (5th Cir. 2003) (per curiam) ("Private citizens do not have the right to bring a private action under a federal criminal statute.").

But, if the claims are construed as state tort claims, Ellis County has governmental immunity to any such claims. Under state law, Texas counties are entitled to governmental immunity from suit "unless the party suing the governmental entity establishes the State's consent to the suit." *Kaufman Cnty. v. Combs*, 393 S.W.3d 336, 342 (Tex. App.—Dallas 2012, pet. denied) (citing *City of Dallas v. Albert*, 354 S.W.3d 368, 373 (Tex. 2011)). Generally, waivers of governmental immunity must be set out in "clear and unambiguous language" in an act of the Texas legislature. *Id.*

For tort claims, the Texas Tort Claims Act contains a limited waiver of governmental immunity for governmental units in Texas, including counties. *See* TEX. CIV. PRAC. & REM. CODE §§ 101.001-.109. But it specifically does not waive governmental immunity for any claims "arising out of assault, battery, false imprisonment, or any other intentional tort." *Id.* § 101.57(2). It also only waives

immunity in specific circumstances relating to acts or omissions of an employee of the governmental unit or conditions or use of property of the governmental unity. *Id.* § 101.021. The definition of employee makes clear that the act does not waive immunity for actions of "an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control." *Id.* § 101.001(2).

Because Lincoln alleges intentional torts committed by an independent contractor or its agents or employees, there is no waiver of Ellis County's governmental immunity as to any state tort claims.

Finally, Lincoln alleges violations of federal transportation laws and regulations and of the Texas Code of Criminal Procedures. *See* Dkt. No. 18 at 8. As discussed above with respect to criminal statutes, every law or regulation does not necessarily give rise to a private cause of action. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 379-84 (1982) (discussing factors to determine whether there is an implied private cause of action for damages in a federal statute).

Some of the provisions cited by Lincoln in the Code of Federal Regulations carry civil penalties for violation. *See, e.g.*, 28 C.F.R. § 97.30 (setting out civil penalties to the United States for violation of regulations in 28 C.F.R. part 97). But nothing in the regulations supports an assertion that they give rise to a private cause of action, particularly a private cause of action against an entity hiring a transport company rather than the transport company itself.

The Omnibus Transportation Employee Testing Act of 1991 requires the Secretary of Transportation to establish regulations for testing employees of operators of aircraft, trains, trucks, and buses for alcohol and controlled substances. *See* OMNIBUS TRANSPORTATION EMPLOYEE TESTING ACT OF 1991, Pub. L. No. 102-143, 105 Stat. 917 (Oct. 28, 1991). Lincoln does not allege anything about drugs or alcohol or improper or insufficient testing of USHPT's employees, but even if he did, as with the other claims, there is nothing to support a private cause of action for violation of this law, particularly against Ellis County.

And Article 51.13 of the Texas Code of Criminal Procedure is the Uniform Criminal Extradition Act, but it does not contain any private enforcement provisions. *See* TEX. CODE CRIM. P. art. 51.13.

In sum, with respect to Ellis County, Lincoln has not stated a claim upon which relief can be granted and, with respect to any state law tort claims, seeks monetary relief from a defendant who is immune. So the Court should dismiss Lincoln's claims against Ellis County with prejudice under 28 U.S.C. § 1915A(b).

## II.    The Eighth Amendment claims against USHPT should be severed and transferred to the Middle District of Florida.

Venue for this action is governed by 28 U.S.C. § 1391(b), *see Davis v. La. State Univ.,* 876 F.2d 412, 413 (5th Cir. 1989), under which venue is proper in the judicial district: (1) where the defendant resides; (2) where a substantial part of the events or omissions giving rise to the claim occurred; or (3) if there is no district where the action may otherwise be brought, in any judicial district in which any defendant is subject to personal jurisdiction.

The Court may transfer a case to any proper judicial district or division "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); *see also Hardwick v. Brinson*, 523 F.2d 798, 800 n.2 (5th Cir. 1975). And a district court may raise the propriety of venue on its own motion. *See Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761 (5th Cir. 1989) ("Decisions to effect 1404 transfers are committed to the sound discretion of the transferring judge" and "may be made *sua sponte*." (citation omitted)).

The events giving rise to Lincoln's claims occurred somewhere between Chicago and Waxahachie. *See* Dkt. No. 18. And Lincoln alleges that USHPT is headquartered in Clermont, Florida. *See id.* at 3. Clermont is located in Lake County, which is in the Ocala Division of the Middle District of Florida. *See* 28 U.S.C. § 89(b). So, for the convenience of parties and witnesses, the claims against USHPT should be severed and transferred to that division and district under 28 U.S.C. § 1404(a).

## Recommendation

The Court should dismiss the claims against Ellis County with prejudice under 28 U.S.C. § 1915A(b) and sever the claims against United States Homeland Prisoner Transport, LLC and transfer them to the Ocala Division of the Middle District of Florida.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV.

P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 7, 2025

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE